**UNITED STATES of America**

v.

**Alric BERRY**

**No. CRIM L–03–0313.**

United States District Court, D. Maryland.

Jan. 28, 2004.

Jane M. Erisman, Thomas M. DiBiagio, Baltimore, MD, for Plaintiff.

Harvey Greenberg, Towson, MD, for Defendant.

### MEMORANDUM

LEGG, Chief Judge.

On January 21, 2004, the Court issued a brief Order denying Defendant Alric Berry's ("Berry") Motion to Suppress Evidence. The Court now writes to explain its ruling.

### I. BACKGROUND

On April 9, 2003, Judge Thomas Bollinger of the Circuit Court for Baltimore County authorized the placement for sixty days of an electronic tracking device on a car owned by Monika Hill ("Hill"), Berry's former co-defendant. On April 9th, armed with the court order, police placed a global positioning system ("GPS") under the bumper of Hill's Mercedes Benz. The GPS provided the police with information that Hill's car traveled to New York City four times within the next sixty days. Although the court order expired on June 8th, the GPS continued to record information about the movements of Hill's Mercedes Benz, and the police learned that her car made a fifth trip to New York City on June 12th, returning to Maryland on June 14th.

Drug Enforcement Administration ("DEA") Special Agent Todd Edwards ("Edwards"), suspecting that Hill was trafficking in drugs, applied for a warrant to search Hill's apartment. In his affidavit, Edwards mentioned all five trips that Hill's vehicle made to New York City. On June 23, 2003, Judge A. Gordon Boone of the District Court of Maryland issued a search warrant for Hill's apartment. The police executed the warrant that day, after

Berry and Hill had returned from a long trip to Florida by car. Among other things, the police found twenty-three balloons filled with heroin, several digital scales, and a supply of small glass vials.

On July 3, 2003, the grand jury returned an indictment charging Berry with: (i) conspiracy to distribute 100 grams or more of heroin, and (ii) possession with intent to distribute 100 grams or more of heroin. The government seeks to introduce the drugs and the drug paraphernalia. Berry has moved to suppress the evidence. On January 16, 2004, the Court held an evidentiary hearing during which Defendant's Counsel argued the following:

(i) the information received from the GPS was obtained in violation of the Fourth Amendment, and, therefore, the information cannot support a finding of probable cause to search Hill's apartment;

(ii) the search warrant for Hill's apartment was invalid because the information in the affidavit was "stale;" and

(iii) the officers did not comply with the "knock and announce" provisions of 18 U.S.C. § 3109.

The Court will address each argument in turn.

### II. ANALYSIS

#### A. GPS Device

It is unclear whether the information stored by the GPS placed on Hill's car was the product of a search and seizure. In *United States v. Knotts,* 460 U.S. 276, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983), and *United States v. Karo,* 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984), the Supreme Court reasoned that the police may place a beeper in a car and monitor it without first obtaining a court order.[1] Measured

1. In both cases the police placed a beeper in a container that the suspect subsequently transported in his car. The Supreme Court's anal-

against today's technology, a beeper is unsophisticated, and merely emits an electronic signal that the police can monitor with a receiver. The police can determine whether they are gaining on a suspect because the strength of the signal increases as the distance between the beeper and the receiver closes.

Beepers placed on cars merely help the police stay in contact with the vehicle that they are actively "tailing." A car driving on the street is in plain view, and the police may follow it without a search warrant or other court order. Binoculars, spotter airplanes, and beepers merely assist the police in keeping the car in view. The Supreme Court held that the police may, therefore, install a beeper without first seeking a judge's permission.[2]

The Supreme Court's analysis may or may not cover a GPS, which, unlike a beeper, is a substitute for police surveillance. Using signals from satellites, the GPS on Hill's Mercedes kept track of the car's location. That device did not broadcast this information in "real time." Instead, the device stored the data in its memory. The police could download the data only by bringing their receiver close to Hill's Mercedes, presumably when the car was parked. The device, therefore, told the authorities where Hill's car had traveled. The GPS neither assisted the police in "tailing" Hill's vehicle nor told them where the car was currently located.

Now on the market are GPS devices even more sophisticated than the one employed against Hill. Such devices can be tracked with the aid of a computer that displays a map showing where the device is in real time. The computer's memory can store the device's movements moment-by-moment for days, weeks, or even years. This improved technology may be viewed as a more sophisticated beeper. A GPS merely records electronically what the police could learn if they were willing to devote the personnel necessary to tail a car around the clock. The Supreme Court might conclude, however, that the new technology is so intrusive that the police must obtain a court order before using it.

This Court need not decide whether modern GPS devices effect a search and seizure. In this case, the police obtained a court order permitting the placement of the device on Hill's Mercedes for sixty days. Even if the GPS data regarding the first four trips to New York City was gathered by a search and seizure, the court order renders the evidence admissible.

The fifth trip to New York City is potentially problematic because it occurred outside the permitted sixty day period. The government will not, however, seek to introduce evidence concerning the fifth trip at trial. Moreover, there was probable cause to search Hill's apartment even if all mention of the fifth trip were removed from the application. This Court, therefore, need not decide whether a GPS, unlike a beeper, requires a court order.

### B. Search Warrant

Berry asserts that the search warrant is invalid because (i) there was no probable cause to believe that Hill was involved in drug trafficking in the spring and summer

---

ysis does not suggest a constitutional difference between the container and the car itself.

**2.** The police may be guilty of a trespass when they install a beeper, but the Supreme Court has held that the commission of a trespass, without more, does not violate the Fourth Amendment. *Compare Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (no trespass, but Fourth Amendment violation), with *Oliver v. United States*, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984) (trespass, but no Fourth Amendment violation).

of 2003, and (ii) the historical information about Hill's drug activities ended in May 2002, and was, therefore, "stale."[3] The Court disagrees.

As Special Agent Edwards's Affidavit details, Hill was a member of a sophisticated, well-organized drug ring that moved multi-kilogram loads of cocaine from Texas into Maryland and New York. On May 15, 2002, one of the ring's couriers was arrested in Maryland with five kilograms of cocaine. On May 23rd, another of the ring's couriers was arrested in Texas with five kilograms of cocaine. Hill was also arrested in connection with the Texas bust.

In July 2002, Special Agent Edwards was attempting to locate Hill as part of his investigation of the drug ring. As Edwards testified at the hearing, he had lost Hill's trail. He did not believe that Hill and her associates had given up the drug trade, however. An informant had told Edwards that Hill and her confederates had decided to lay low for a few months following the drug seizures. Edwards regained Hill's trail in Maryland in the early summer of 2003 by putting together telephone records, a tip from a confidential informant, and the criminal history check on a person whose name matched one of Hill's aliases.

Edwards confirmed that the "Cynthia Shaw" living at 29 Cue Court Apartment 1C, Owings Mills, Maryland was Hill. Edwards did not request an immediate search warrant, but instead took steps to investigate Hill's current activities. The GPS showed that Hill was making frequent, short trips to New York City, which is a "source city" for drugs coming into Maryland. Surveillance showed that Hill was working with Berry, that they drove luxury cars, that they had no record of employment, and that they "switched" cars in an apparent attempt to detect if they were being followed.

■ Even if the police had not uncovered evidence of unexplained wealth and frequent short trips to New York City, probable cause would have existed to search Hill's apartment. Similar to legitimate businesses, drug organizations maintain records including telephone numbers, address books, tally sheets, "owe" sheets, rental car receipts, airline tickets, personal tax returns, and the like. Because this type of business information has ongoing value, one would expect a drug operator like Hill to have taken her records when she moved from Texas to Maryland. *See United States v. Rhynes*, 206 F.3d 349 (4th Cir.1999) (finding that a warrant was not stale even though the alleged drug activities were two years old because the items to be seized were documentary evidence not ordinarily destroyed). Hill's suspect conduct in 2003 reinforces the probability that her apartment would contain evidence of drug trafficking. Accordingly, the search warrant was supported by an affidavit demonstrating probable cause.[4]

## C. "Knock and Announce"

■ Berry asserts that the officers violated the "knock and announce" provisions outlined in 18 U.S.C. § 3109 because they did not announce their presence and give Hill enough time to open the door before using a battering ram to gain entry. The Court disagrees and is satisfied, based on the evidence presented at the hearing, that

---

3. The government does not contest that Berry's standing to assert these arguments.

4. Moreover, even if the search warrant was not supported by probable cause, there is nothing to suggest that the good faith exception outlined in *United States v. Leon*, 468 U.S. 897 (1984), does not apply. For example, Berry does not provide any evidence that Special Agent Edwards was deceptive or reckless in presenting his affidavit to the issuing magistrate judge.

the officers complied with the "knock and announce" requirement.

Special Agent Edwards, who has participated in the execution of more than 300 search warrants during his nine years with the DEA, was in charge of the team that executed the search warrant. Edwards testified that his usual practice is to pound on the door with his fist and loudly announce "DEA search warrant" three times. Edwards also testified that he usually waits fifteen to twenty seconds between each knock and announce, and that he followed this standard procedure at Hill's apartment. This means that approximately one minute elapsed between the first knock and the use of the battering ram.

Edwards also recalled that he had a brief disagreement with DEA Special Agent Bernard Malone ("Malone") after the second knock and announce. Malone, who had heard movement inside the apartment, argued that they should enter immediately. Edwards refused and knocked and announced a third time. Malone, who was sequestered during Edwards's testimony, fully corroborated Edwards's recollection.

Berry did not testify. He did, however, call Hill as a witness. Hill, originally a co-defendant, has signed a plea agreement and has agreed to testify against Berry at trial. Hill's recollection of the execution of the warrant is at odds with that of Edwards and Malone. Hill stated that she and Berry had arrived home in the afternoon of June 23rd after a long drive from Florida. The couple had been in the apartment for roughly five minutes before the police forced open the door and arrested Berry and Hill.

Hill testified that she and Berry were in the bedroom unpacking when she heard someone rap using the small plastic knocker on the front door. After asking "who was it," Hill headed towards the door. Hill also explained that the walls are thin, the apartment is small, and she could usually hear people when they arrived at her front door.

It is difficult to reconcile Hill's testimony with that of the two officers. Because of the apartment's small size and thin walls, anyone inside would have been able to hear an officer pounding on the door and demanding entry. There are reasons that could explain why Hill did not hear Edwards. Hill testified that she had just completed a long and taxing drive, that she had driven part of the way, that she had smoked marijuana earlier that day, and that she was tired. The presence of the drugs in the car undoubtedly added to the stress of the drive, and Hill might have been preoccupied with unpacking and storing them.

Even if these facts do not account for the discrepancy, this Court would accept the officers' testimony. Nothing in the officers' demeanor suggested that they were supplying facts that they did not recall, shading an uncomfortable truth, or being untruthful in any degree. Accordingly, the Court finds that the officers complied with the "knock and announce" provisions outlined in 18 U.S.C. § 3109.

## III. CONCLUSION

For the foregoing reasons, the Court DENIED Defendant's motion to suppress the evidence obtained during the search at Hill's apartment.